**Ronald L. HILLARD, et al., Plaintiffs,**

**v.**

**MEDTRONIC, INC., Defendant.**

**Civil No. 95–546.**

United States District Court,
M.D. Pennsylvania.

July 21, 1995.

Arthur J. Schwab, Buchanan Ingersoll Professional Corporation, Pittsburgh, PA, Daniel Thomas Brier, Myers Brier & Kelly, Scranton, PA, Marguerite Walsh, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for plaintiffs.

Paul McDonald, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, PA, Wayne S. Moskowitz, William Z. Pentelovitch, Jonathan S. Parritz, Maslon, Edelman, Borman & Brand, Minneapolis, MN, R. Lawrence Purdy, Maslon, Edelman, Borman & Brand, Minneapolis, MN, John P. Lavelle, Jr., Hangley Aronchick Segal & Pudlin, Philadelphia, PA, Mark A. Aronchick, Aronchick, Segal & Pudlin, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiffs, Ronald L. Hillard (Hillard), Richard W. Conklin (Conklin), Intermedics, Inc., and CarboMedics, Inc. initiated this declaratory judgment action on April 7, 1995, against defendant Medtronic, Inc. (Medtronic). Plaintiffs Hillard and Conklin are former employees of Medtronic and seek a judgment declaring that restrictive covenants signed by them, while employed by Medtronic, are now unenforceable. On May 9, 1995, Medtronic filed an answer and counterclaim against all four plaintiffs. In the counterclaim, which alleges breach of contract and tortious interference with business relationships, Medtronic asserts that Hillard and Conklin violated the restrictive covenants, which it contends are valid and enforceable. On May 26, 1995, plaintiffs filed a motion for summary judgment and a supporting brief on June 6, 1995. On May 26, 1995, Medtronic moved for a preliminary injunction or, in the alternative, for a temporary restraining order with brief in support. A brief in opposition to this motion was submitted on June 6, 1995, by the plaintiffs, and defendant filed a reply brief on June 19, 1995. On June 29, 1995, a supplemental brief was filed by plaintiffs in support of their summary judgment motion and an additional brief in opposition to Medtronic's motion for a preliminary injunction.

The motion for a preliminary injunction filed by Medtronic and the motion for summary judgment filed by the original plaintiffs are ripe for disposition. For the reasons that follow, plaintiffs' motion for summary judgment will be denied and defendant's motion for a preliminary injunction will be granted.

### I.

#### Conklin

Richard W. Conklin was employed as a "clinical specialist" for Medtronic providing "technical support for Medtronic customers" from March or early April, 1988 until March 17, 1995. Conklin signed a document entitled "MEDTRONIC EMPLOYEE AGREEMENT" on March 25, 1988, which contained a restrictive covenant, as follows:

Employee agrees that for two (2) years after termination of employment he/she will not directly or indirectly render services (including services in research) to any person or entity in connection with the design, development, manufacture, marketing or sales of a Competitive Product that is sold or intended for use or sale in any geographic area in which Medtronic actively markets a Medtronic Product or intends to actively market a Medtronic Product of the same or general type or function. It is expressly understood that the employee is free to work for a competitor of Medtronic provided that such employment does not include any responsibilities for, or in connection with, a Competitive Product as defined in this Agreement for the two year period of the restriction.

If the Employee's only responsibilities for Medtronic during the last two years of employment have been in a field sales or a field sales management capacity, this provision shall only prohibit for one (1) year the rendition of services in connection with the sales of a Competitive Product to persons or entities located in any sales territory the Employee covered or supervises for

Medtronic during the last year of employment.

Under the terms of the covenant contained in Conklin's employment agreement, for two years subsequent to his termination, an employee would be prohibited from future employment with any entity involved in the "design, development, manufacture, marketing, marketing or sales of a Competitive Product" which is sold or intended to be sold in a Medtronic's current market or any geographic area in which Medtronic intends to market its products. This restriction would not apply, however, if the employee's "only responsibilities for Medtronic during the last two years of employment have been in a field sales or a field sales management capacity" in which case he would be prohibited, for one year, from sales of a competitive product to "persons or entities located in any sales territory [he] covered or supervised for Medtronic during the last year of employment." The thrust of both the one and two year agreements, with their accompanying explanations of a competitive product, was that the employee was free to work for a competitor except that he would be restricted for a specific period of time, *viz.,* one or two years, from employment involving responsibilities for, or in connection with, a product similar to any Medtronic products on which the employee had worked during the last two years of employment.

Conklin contends that he was not in a field sales capacity and that only the two year general restriction would apply to him. He further argues that the two year restriction is "so overbroad as to geography and products as to be invalid." (Doc. 50, p. 3). He supports his argument that the two year limitation applies by pointing to various deposition testimony and the stipulation of the parties which would reveal that: (1) Conklin did not *sell* Medtronic products; (2) he did not receive sales commissions from Medtronic; (3) the vast majority of Conklin's time was spent rendering technical advice in operating rooms; and (4) the job description of a Clinical Specialist differs from that of Field Sales Representative.

Medtronic counters that Conklin in his position as a clinical specialist is subject to the one year restriction, and that it is reasonable and limited. It asserts that the two year restriction was intended to cover employees who did not directly develop relationships with Medtronic customers. Conklin worked directly with Medtronic customers and assisted at surgical implant procedures when the Sales Representative was not available. Since he had some sales support duties, including reporting only to the Sales and Marketing Division, it is argued that he operated in a sales capacity and falls under the one year restriction. During his deposition, he testified that he "would meet on occasion [with Ron Hillard, a Medtronic salesman], it may not be quarterly, but we meet on occasion to discuss his territory in order to see where he needed to be spending more time as a salesman in accounts interfacing with his customers." (Conklin deposition at P. 202). He also testified that his "role was to tell them [customers] about the newer products and explain the differences of the product because that was my job as a TSI." This was done because "the company wanted to move to newer stuff." (Conklin deposition at P. 204). Medtronic argues further that, even if the court decides that Conklin was not engaged in a field sales capacity and the broader two year covenant applies, that it should not be penalized for this misinterpretation and the court should resort to the "blue pencil" approach approved by the Pennsylvania appellate courts and grant the relief necessary to reasonably protect its business interests.

■ As to plaintiffs' summary judgment motion, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court outlined the proper interpretation of Rule 56(c):

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment "as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case to which she has the burden of proof.

*Celotex,* 477 at 322–23, 106 S.Ct. at 2552–53. "Any credible evidence contrary to the moving party's version of events will defeat the summary judgment motion." *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 908 (3d Cir.1984).

■ Based on the foregoing, the court believes that a material issue of fact exists as to which restriction applies to Conklin. Accordingly, the plaintiffs' motion for summary judgment, predicated on the assertion that the one year restriction applies, will be denied.

Turning to the motion for a preliminary injunction, Medtronic contends that, while this factual dispute precludes summary judgment for plaintiff, it is not dispositive of its motion for preliminary injunctive relief. As previously noted, it argues that even if the two year restriction applies, that this factual situation is appropriate for utilizing a "blue pencil" approach.

The parties are in agreement that the two year restriction is overbroad and, as it stands, unenforceable. Plaintiffs point to the case of *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973), for the proposition that the two year restriction is not valid and cannot be enforced. In *Reading Aviation,* the employee, Bertolet, signed a contract wherein he agreed that, after termination of his employment, he would not "own any interest in, or engage in any way, directly or indirectly, in any business competitive with [Reading] or any of [its] subsidiaries, or solicit or in any other manner or way assist any such competitive

business ..." *Id.* at 490, 311 A.2d 628. The Court found that the restriction was unlimited as to time and space and void on its face. The Court reasoned that "[i]n the present case, we think the open-ended restrictions on Bertolet imposed an unconscionable burden on his ability to pursue his chosen occupation." *Id.* at 493, 311 A.2d 628. The *Reading* case, however, is inapposite to the present case both as to facts and law. First, the restriction under consideration here is not unlimited as to time, the restriction is limited to a period of two years. Further, Conklin is not prohibited from competing "in any manner" with Medtronic, he is restricted only from involvement with certain products on which he worked within the prior two year period when he was employed by Medtronic.

Moreover, three years after the *Reading* case was handed down, the Pennsylvania Supreme Court decided the case of *Sidco Paper Company v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976). There, the Court held that, under Pennsylvania law, a court may tailor a restrictive covenant that is not reasonably necessary for the protection of the employer to make such a covenant enforceable. The Court stated: "where the covenant imposes restrictions broader than necessary to protect the employer ... a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer." 465 Pa. at 595, 351 A.2d 250.

Shortly after the *Sidco* case, the Pennsylvania Supreme Court reaffirmed the validity of post-employment restrictions in *Bryant Co. v. Sling Testing & Repair,* 471 Pa. 1, 369 A.2d 1164 (1977). The Court, citing *Sidco,* reiterated the elements which must be present before a restrictive covenant will be enforced, *viz.,* that the agreement is incident to an employment relationship, that the restrictions are reasonably necessary for the protection of the employer and are limited in time and geography. *Id.* at 10, 369 A.2d 1164. The Court noted that the burden of demonstrating that such a provision is invalid "is on him who sets up unreasonableness as the basis of contractual illegality." *Id.* at 12, 369 A.2d 1164. As to the reasonableness of time and geographic restrictions, the Court

upheld a restriction of three years which prevented the former employee from selling to specific accounts located in the area of "Southern New Jersey, Eastern Pennsylvania and the State of Delaware." 471 Pa. at 11–13, 369 A.2d 1164.

A synthesis of *Bryant* and *Sidco* would indicate that reasonable restrictive covenants are enforceable in Pennsylvania and that when a non-compete agreement intended for the protection of the employer is unreasonably overbroad, such a restriction can be modified by an equity court in an effort to make it reasonable. These principles have been consistently applied by the Pennsylvania appellate courts.

In *Bell Fuel Corp. v. Cattolico*, 375 Pa.Super. 238, 251, 544 A.2d 450 (1988), the Court held "[c]ase law empowers Pennsylvania courts to grant partial enforcement of an overbroad covenant either by excising offensive portions of the covenant or by adding language ... In other words, a court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant as so modified." *See also Thermo–Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 596 A.2d 188 (1991); *Davis & Warde, Inc. v. Tripodi*, 420 Pa.Super. 450, 616 A.2d 1384 (1992). In *Plunkett Chemical Co. v. Reeve*, 373 Pa. 513, 95 A.2d 925 (1953), although there was no geographical limit, the court found that, because the employee had a defined sales territory during his employment, the parties could be held to have actually intended to restrain his past employment activities only in the same territory.

The plaintiffs have not cited, nor has the court's own research revealed, any appellate authority in Pennsylvania which would suggest that the principles set forth in *Sidco* and *Bryant* are no longer authoritative. Plaintiffs have cited *Martin Industrial Supply Corp. v. Riffert*, 366 Pa.Super. 89, 530 A.2d 906 (1987), where a panel of the Pennsylvania Superior Court held that the trial court did not abuse its discretion in refusing to issue a preliminary injunction or to rewrite an overbroad covenant. That case, however, made no reference to the continued validity of the law in Pennsylvania which allows a court to blue pencil a covenant as set forth by the Supreme Court in *Sidco*. Since the only holding of the *Riffert* case was that the trial court did not abuse its discretion in refusing to rewrite the questioned agreement, it provides little guidance here. Similarly, *Peripheral Dynamics Inc. v. Holdsworth*, 254 Pa.Super. 310, 385 A.2d 1354 (1978) is not instructive. *Holdsworth* was decided by an equally divided panel of six Judges of the Superior Court which held that the trial court did not abuse its discretion in refusing to limit the scope of an otherwise unenforceable covenant. Plaintiffs have cited other Pennsylvania cases in support of the contention that blue penciling is not appropriate here, however, none of those cases undermine the holding in *Sidco* and involve inapposite factual situations. For example, in *Bilec v. Auburn & Assoc. Pension Tr.*, 403 Pa.Super 176, 588 A.2d 538 (1991), the employer sought to deprive its employees of the right to participate in a pension plan through the use of a restrictive non-competition covenant. The Superior Court held that there was no showing that the restrictions were necessary for the employee's protection and that it was unduly harsh for the employer to attempt to enforce the covenant as a means of divesting the employees from their pension benefits. Thus, the inclination of the Pennsylvania Appellate Courts to modify restrictive covenants in a manner reasonably necessary to protect the interests of the employer remains intact.

■ Based on the foregoing, it is clear that the overwhelming weight of authority in Pennsylvania supports the principle that a court sitting in equity may reform an unenforceable non-compete covenant in an employment contract.

■ An analysis of the relative equities of the parties is necessary in order to determine whether the court should utilize the "blue pencil" approach in this case. In undertaking this analysis, it is important to briefly review the factual backdrop in order to determine the original intentions and expectancies of the parties to the agreement.

When Conklin was employed by Medtronic in March, 1988, he signed an Employment Agreement that he knew temporarily restricted his future employment with competi-

tors of Medtronic. He did not know which restriction applied to him, *i.e.*, the one year limitation as to those in a Field Sales Capacity or the two year limitation as to all other employees. Unable to locate a copy of the Agreement, he inquired in November, 1994, as to the details of the limitation and was allegedly informed that if he left the company, he was only obligated to refrain from contacting the top fifteen revenue producing accounts in his district.

Upon resigning from Medtronic on March 17, 1995, Conklin represented in his letter of resignation that he would honor all "obligations to Medtronic regarding my valid non-compete ...". On March 31, 1995, Medtronic's assistant general counsel, Bruce A. Johnson, responded by letter in which he reminded Conklin that, under the Employment Agreement Conklin had "... agreed not to provide any service to any account located in your Medtronic territory in connection with any product competitive with a Medtronic product" and requested him to "stay out of your former Medtronic accounts".

In the meantime, on March 30, 1995, Conklin forwarded a letter to his former superior, Frank Carson, in which he acknowledged receipt that very day of a copy of his Employment Agreement but now stated, "I have been advised that the non-compete I received today is too broad both as to the length of time (2 years) and the geographic scope (any area where Medtronic markets or intends to market products)". Thus, it was evident that Conklin knew that there were restrictions on future employment with a competitor in the district in which he served and that he was prepared to honor that commitment when he resigned on March 17, 1995. His attitude obviously changed after receiving an opinion on the validity of the covenant and, in this action, he now seeks to be relieved completely from his commitment. At the same time, it is also apparent from Bruce Johnson's letter of March 31, 1995 that Medtronic's purpose in enforcing the covenant was not to deprive Conklin of a livelihood anywhere in the world, as Conklin now claims, but to protect its competitive position for a limited period for certain products with customers previously serviced by Conklin. While employed by Medtronic, Conklin was in a position where he could develop relationships of trust and confidence with Medtronic customers. His work placed him in operating rooms where he rendered advice to Medtronic's physician customers who were performing serious surgery. Given the significant relationship that must develop between employees such as Conklin and Medtronic's customers, it is reasonable that Medtronic be given an opportunity to re-establish such relationships when an employee leaves.

The court finds that the equities in this matter balance in favor of Medtronic, and assuming that the two year restriction applies to Conklin, the court will "blue pencil" the restriction contained therein to make it reasonable and enforceable.

■■ The Court of Appeals for the Third Circuit reiterated the standard to be applied in deciding a motion for a preliminary injunction in *Campbell Soup Co. v. Conagra, Inc.*, 977 F.2d 86 (3d Cir.1992). The Court stated:

'In order to support a preliminary injunction, plaintiff must show both a likelihood of success on the merits and a probability of irreparable harm. Additionally, the district court should consider the effect of the issuance of a preliminary injunction on other interested persons and the public interest'.... Furthermore, *a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.* Rather, the moving party must make a 'clear showing of immediate irreparable harm.'

*Id.* at 91 (*quoting Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir.1990) and *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989). The foregoing analysis demonstrates a strong likelihood that Medtronic would prevail on the merits[1].

---

1. This is true as well if it is ultimately found that the one year restriction applies.

The one year restriction contained in Conklin's employment agreement provides that, if he was employed in a sales capacity, he is prohibited from rendering services in connection with the sale of a competitive product, for one year, to persons or entities located in any sales territory that he covered during his last year of employment with Medtronic.

The next consideration is whether Medtronic has shown a probability of immediate irreparable harm. *Campbell Soup Co., supra*. As previously discussed, Medtronic has an interest in preserving customer relationships, these interests were intended to be protected by the non-compete agreement. The evidence of record demonstrates that Conklin is currently acting on behalf of a competitor of Medtronic and pursuing business relationships with customers of Medtronic that he serviced while employed there. To the extent that the restrictive covenant is being violated, Medtronic is suffering irreparable harm by the potential loss of customers posed by Conklin's activities.

Lastly, the court must consider the effect that the injunction will have on other interested parties and the public interest. As discussed above, the equities in the case weigh in favor of Medtronic and against Conklin. The public interest is furthered by protecting legitimate business interests that are recognized under Pennsylvania law. The Court in *Sidco* stated that "[a]n employer's right to protect, by a covenant not to compete, interest in customer goodwill acquired by an employee is well established in Pennsylvania." 465 Pa. at 591, 351 A.2d 250. Such covenants provide an employer with a breathing spell in which to regain customer goodwill after the loss of an employee. Accordingly, the public interest is well served by enforcement of such agreements.

The elements necessary for the issuance of a preliminary injunction having been established, the court will grant defendant's mo-

tion as to Conklin and restrain him from contacting or servicing any customers in connection with a Medtronic product on which he had worked during the last year of his employment.

## II.

### *Hillard*

Ronald L. Hillard was employed as a sales representative by Medtronic from May 1983 until March 17, 1995. While employed by Medtronic, Hillard sold cardiac pacemakers and related devices to physicians and hospitals. Currently at issue is a clause in a contract, entitled "MEDTRONIC SALES EMPLOYEE AGREEMENT" that Hillard entered into on May 23, 1983. The provision states, in part:

> After termination of employment, Employee will not solicit sales of Competitive Products to Key Accounts located in any sales territory he/she covered or supervised for Medtronic during the last year of employment for a period of time equal to one-half the time he/she was responsible for that account (in either a sales or supervisory capacity) but not more than 270 days; provided, however, that if the Employee fails to give notice required by paragraph 7, this restriction shall be extended for an additional period of time equal to the ninety (90) day notice period less the actual notice period.

On March 17, 1995, Hillard resigned from his employment with Medtronic. He now "represent[s] and promote[s]" the products

There is no dispute that the restrictive covenant was contained in an employment agreement between the parties. As to whether the restrictions are reasonably necessary for the protection of the employer, "Pennsylvania cases have recognized that trade secrets of an employer, customer good will and specialized training and skills acquired from the employer are all legitimate interests protectible through a general restrictive covenant." *Thermo-Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 65, 596 A.2d 188 (1991). Medtronic argues that enforcement of the covenant is necessary for the protection relationships with its customers. It stresses the testimony of Conklin who stated that 90% of his time while employed with Medtronic was spent in operating rooms while Medtronic products were being implanted. Medtronic maintains that while employed, Conk-

lin developed "relationships of trust and confidence" with its customers. The evidence of record supports the proposition that part of Conklin's job was to develop goodwill with existing and potential customers and that he did indeed accomplish this. Therefore, to the extent that it seeks to preserve customer relationships, the restrictions in the agreement are reasonably necessary for the protection of Medtronic.

As to the time and geographic restrictions, it cannot be said that the limitations in the one year covenant are unreasonable. Conklin is prohibited from dealing with the Medtronic customers that he serviced in his last year of employment and only for a period of one year. Accordingly, assuming that the one year restriction applies, Medtronic would be entitled to injunctive relief.

of co-plaintiffs Intermedics and CarboMedics. Hillard received a letter from Bruce A. Johnson, Assistant General Counsel to Medtronic (Johnson), dated March 31, 1995, which details the "key accounts" and "Competitive Products" that he must refrain from soliciting. Based on this letter, which identifies heart valves as an applicable competitive product, Hillard seeks to set aside his restrictive covenant as being overly broad and unenforceable as interpreted by Medtronic inasmuch as he did not sell heart valves during his last year of employment with Medtronic, a fact which Medtronic now concedes. Hillard maintains that he is fully complying with the terms of his agreement and is entitled to summary judgment. Medtronic resists by claiming that a real threat exists that Hillard will violate his non-competition agreement because, by calling on former customers ostensibly to sell heart valves, he will be in a position to promote the sale of pacemakers and defibrillators. In short, there is no evidence that Hillard is violating his agreement or that Medtronic is now interpreting it in a manner that renders it unenforceable. Thus, there is no need for the court to address this issue at this time. Accordingly, Hillard's motion for summary judgment will be denied.