TRAFFIC CONTROL SERVICES, INC., DBA ALLIED TRENCH SHORING SERVICES; AND PHILIP A. BURKHARDT, APPELLANTS, v. UNITED RENTALS NORTHWEST, INC.; AND NES COMPANIES, L.P., RESPONDENTS.

No. 40798

April 13, 2004

87 P.3d 1054

*Dickerson, Dickerson, Consul & Pocker* and *Douglass A. Mitchell,* Las Vegas, for Appellants.

*Piper Rudnick, LLP,* and *Joanna S. Kishner* and *Gary C. Moss,* Las Vegas; *Haynes & Boone, LLP,* and *Melissa M. Goodman,* Dallas, Texas, for Respondents.

# OPINION

*Per Curiam:*

Philip A. Burkhardt and his current employer, Traffic Control Services, Inc., d/b/a Allied Trench Shoring Services, appeal the issuance of a preliminary injunction enforcing a noncompetition covenant in favor of United Rentals Northwest, Inc., the purchaser of the corporate assets of Burkhardt's former employer, NES Trench Shoring.

The primary issue on appeal is whether an employer in a corporate sale may assign rights under an employee's covenant not to compete without the employee's consent. We hold that an employer may only assign such covenants with the employee's consent and only when the consent is supported by independent consideration.

## *FACTUAL HISTORY*

Burkhardt specializes in the selling and renting of trench shoring equipment to construction contractors in the Las Vegas area. United employed Burkhardt during the years 1999 and 2000. In September 2000, he became dissatisfied with United's customer service policies and obtained a position in Las Vegas with NES, which he felt provided more specialized service and better opportunities for career advancement.

As a condition of employment with NES, and in exchange for $10,000, he signed noncompetition and nondisclosure covenants.

He alleged below that, before executing those agreements, he received assurances that NES management had no plans to sell the company and would not, in any event, sell to United. In this, Burkhardt's regional manager indicated that NES might even purchase United.[2] The covenants stipulated that, if Burkhardt's employment with NES was terminated, Burkhardt would not, for a period of one year, engage in selling, leasing, marketing, distributing, or dealing with trench shoring equipment within a sixty-mile radius of his work location. Additionally, Burkhardt agreed, in perpetuity,

> to keep secret and not disclose to any other party any information to include, but not be limited to, customer lists, employee lists, price lists, pricing strategies, training programs and manuals, trade manuals and sales programs and materials.

While at NES, Burkhardt received confidential customer lists, price lists, pricing strategies, and training and sales information. In July 2001, NES promoted Burkhardt to branch manager. Burkhardt's management position required him to use NES's business information to ensure that the Las Vegas branch was profitable, that NES delivered equipment on time, and that the equipment was properly built and installed. Burkhardt also reviewed the branch's monthly sales and rental revenues, developed an annual business plan, and prepared bids for potential new business. These duties allowed Burkhardt to become familiar with NES's customer base.

On June 30, 2002, United and NES entered into an asset purchase agreement, including goodwill, under which United paid three times the concern's fair market value. The purchase agreement was limited to certain assets, providing that "[a]ll contracts and agreements that are not listed as 'Assumed Contracts' are 'Excluded Assets.' " While the agreement listed other noncompetition covenants as assumed contracts, Burkhardt's noncompetition covenant was not on the list. The purchase agreement also contained a recitation that "[n]one of the Assumed Contracts requiring a consent to assignment have been obtained prior to the Closing Date." Notwithstanding the contract terms, NES's negotiators submitted affidavits in the proceedings below asserting that the asset sale included all of NES's noncompetition covenants, including the one with Burkhardt.

A week before closure of the asset purchase, United requested or demanded that a significant number of the listed key employees sign new one-year noncompetition and nondisclosure covenants. Consideration for the new covenants included salary packages to be paid during the noncompetition enforcement period and incentive bonuses. Nine of the eighty-one key employees, including Burkhardt, refused to sign the new covenants.

---

[2]Burkhardt later testified that if he had known NES would sell its business to United within two years, he would not have worked for NES.

Burkhardt remained as United's Las Vegas sales manager during the transition period following the sale, but again became dissatisfied with United's customer service. He began negotiations in early August 2002 with Traffic Control, United's direct competitor. Burkhardt informed Traffic Control about his noncompetition covenant with NES, which he believed was invalid because he was terminating employment with United, not NES.

On August 5, 2002, Burkhardt accepted employment with Traffic Control. That same day, he signed United's policies and procedure bulletin, which defined confidential information and the policy regarding nondisclosure. United terminated Burkhardt's employment on August 8, 2002, after which he returned all of his work-related items to company officials.

Burkhardt commenced his new position on August 10, 2002, after signing new noncompetition and nondisclosure covenants.[3] He began contacting companies to solicit business on behalf of Traffic Control but was mostly unsuccessful in obtaining new business.

United, through counsel, sent Burkhardt written notification that his new employment constituted breaches of his noncompetition and nondisclosure covenants. In light of Burkhardt's continued relationship with Traffic Control, United and NES commenced the action below to enforce the covenants.

## PROCEDURAL HISTORY

On August 27, 2002, NES and United filed a verified complaint alleging that Burkhardt obtained confidential information during his employment with them and that he subsequently used and disclosed NES/United confidential information, contacted United's clients, and attempted to solicit United's customers. The district court ultimately entered a preliminary injunction enforcing the NES noncompetition covenant for a period of one year following termination and enjoining Burkhardt from using or disclosing confidential information learned during his employment with NES and United. In this, the district court concluded that Burkhardt's noncompetition covenant was reasonable in time and scope, assignable as an asset of value, and that NES validly assigned the covenant to United in the asset sale.

## DISCUSSION

### Mootness

As a preliminary matter, we note that the injunction expired on August 8, 2003. However, given the relatively short term of the noncompetition covenant, and the likelihood that a similar issue

---

[3]Burkhardt has remained on Traffic Control's payroll since August 10, 2002, notwithstanding the injunction.

will arise in the future, we conclude that the issues in this matter are capable of repetition, yet evading review.[4] Accordingly, the appeal is not moot.[5]

*Assignability of noncompetition covenants*

Traffic Control and Burkhardt contend that the purported assignment was invalid. We agree and hold that, absent an agreement negotiated at arm's length, which explicitly permits assignment and which is supported by separate consideration, employee noncompetition covenants are not assignable.

Employers commonly rely upon restrictive covenants, primarily nondisclosure and noncompetition covenants, to safeguard important business interests. "The non-disclosure covenant limits the dissemination of proprietary information by a former employee, while the non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographic area."[6]

"[B]ecause the loss of a person's livelihood is a very serious matter, post employment anti-competitive covenants are scrutinized with greater care than are similar covenants incident to the sale of a business."[7] The question of whether noncompetition covenants may be assigned from one employer to another through the medium of an asset sale (or otherwise) is an issue of first impression for this court.

Burkhardt and Traffic Control argue that NES could not assign the noncompetition covenant to United without Burkhardt's consent because the covenant was personal to Burkhardt, that the asset purchase agreement did not contain a clause permitting the assignment, and that Burkhardt only consented to be bound to NES when he signed the covenant. They contend that NES could have included a clause in the covenant permitting assignment or negotiated for Burkhardt's consent, but chose not to do so. Burkhardt and

---

[4]*Binegar v. District Court*, 112 Nev. 544, 548, 915 P.2d 889, 892 (1996); *Langston v. State, Dep't of Mtr. Vehicles*, 110 Nev. 342, 344, 871 P.2d 362, 363 (1994).

[5]At oral argument before this court, United stated that it is seeking a permanent injunction in district court to enforce Burkhardt's nondisclosure covenant. Because the noncompetition covenant has expired, our decision in this matter concerning it has no practical effect on issues concerning the nondisclosure agreement.

[6]*Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002).

[7]*Ellis v. McDaniel*, 95 Nev. 455, 459, 596 P.2d 222, 224 (1979).

Traffic Control also argue that the attempted assignment to United is unenforceable as against public policy, because Burkhardt was unable to assess his new employer and weigh the benefits and burdens of being bound by a noncompetition covenant with United. They argue that the district court's ruling bound Burkhardt to United, an employer for whom he did not wish to work.

In response, NES and United argue that NES validly assigned Burkhardt's covenant as an asset of value and that a majority of courts allow enforcement of such assignments by the assignee. NES and United also argue that the covenant was not the equivalent of a personal services contract because it only required Burkhardt "to abstain from certain activities." Finally, they argue that judicial enforcement of Burkhardt's covenant does not violate public policy or NRS 613.200;[8] rather, public policy supports enforcement of the covenant to protect the health of the business and its goodwill.

There is a distinct split among jurisdictions regarding whether noncompetition covenants are assignable absent an employee's consent.[9]

---

[8]NRS 613.200(4) permits employers and employees to negotiate and execute enforceable noncompetition covenants if they are supported by valuable consideration and are reasonable in scope and duration. At the time that Burkhardt entered into the noncompetition covenant with NES, this provision appeared as subsection 2 of NRS 613.200. The provision was renumbered during the 2003 legislative session, but it was not substantively amended. 2003 Nev. Stat., ch. 140, § 16, at 798.

[9]*Compare Hess,* 808 A.2d at 922 (noncompetition covenant was not assignable in an asset sale absent employee's consent), *with J.H. Renarde, Inc. v. Sims,* 711 A.2d 410, 412-14 (N.J. Super. Ct. Ch. Div. 1998) (as a matter of law, noncompetition covenants may be freely assigned in an asset sale like any other contractual right in the absence of some express contractual prohibition), *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir. 1990), *Reynolds and Reynolds Co. v. Tart,* 955 F. Supp. 547, 556-57 (W.D.N.C. 1997), *Hexacomb Corp. v. GTW Enterprises, Inc.,* 875 F. Supp. 457, 464 (N.D. Ill. 1993), *Premier Laundry v. Klein,* 73 N.Y.S.2d 60, 61 (N.Y. Spec. Term 1947) (an assigned noncompetition covenant is "a valuable right which the courts will enforce"), *reversed on other grounds,* 78 N.Y.S.2d 161 (App. Div. 1948), *and Restatement (Second) of Contracts* § 317 cmt. d, illus. 6 (1981) ("B sells his business to A and makes a valid contract not to compete. A sells the business to C and assigns to C the right to have B refrain from competition. The assignment is effective with respect to competition with the business derived from B. The good will of the business, with contractual protection against its impairment, is treated as an assignable asset."). *See generally* Annotation, *Enforceability, by Purchaser or Successor of Business, of Covenant Not to Compete Entered into by Predecessor and its Employees,* 12 A.L.R.5th 847 (1993) (collecting cases). There is even a difference of opinion as to the position taken by a majority of the courts. *Compare* 6 Richard A. Lord, *Williston on Contracts* § 13:13, at 586-94 (4th ed. 1995) ("The authorities are . . . in conflict with respect to the important issue of whether an employee's restrictive covenant may be enforced against him by an assignee of or other successor in interest to his employer's rights. A majority of courts per-

We agree with those jurisdictions holding that noncompetition covenants are personal in nature and, therefore, unassignable as a matter of law, absent the employee's express consent.[10] When an employee enters into a covenant not to compete with his employer, he may consider the character and personality of his employer to determine whether he is willing to be held to a contract that will restrain him from future competition with his employer, even after termination of employment. This does not mean, however, that the employee is willing to suffer the same restriction with a stranger to the original obligation.[11] Certainly, the sale of a business fundamentally alters the nature of an employment relationship.

Burkhardt's covenant did not contain an assignment clause. While some courts have concluded that such an omission does not bar assignment,[12] a reading of assignability into the covenant is contrary to the intentions of the original parties to it.[13] As we have stated, if no ambiguity exists in a contract, "the words of the contract must be taken in their usual and ordinary signification."[14] NES, as the drafter of the covenant, was in the best position to negotiate for an assignment clause. However, for whatever reason, it chose not to do so. The plain meaning of the contract was for the benefit of NES and Burkhardt, not their assigns and successors.

While NES and United would place the burden on the employee to request a clause prohibiting assignment, we believe the burden rests with the employer. We hold that, in Nevada, a covenant not to compete is unassignable absent an express clause permitting assignment. Recognizing that noncompetition covenants must be sup-

---

mit the successor to enforce the employee's restrictive covenant as an assignee of the original covenantee (the original employer) . . . ." (footnote omitted)), *with Hess,* 808 A.2d at 918 (noting that "the majority of [states that have considered the assignability of noncompetition and nondisclosure covenants] have concluded that the restrictive covenants are not assignable").

[10]*See, e.g., Sisco v. Empiregas, Inc. of Belle Mina,* 237 So. 2d 463, 466-67 (Ala. 1970); *SDL Enterprises, Inc. v. DeReamer,* 683 N.E.2d 1347, 1349-50 (Ind. Ct. App. 1997); *Smith, Bell & Hauck, Inc. v. Cullins,* 183 A.2d 528, 532 (Vt. 1962); *see also Corporate Exp. Office Products v. Phillips,* 847 So. 2d 406, 413 (Fla. 2003) ("Thus, when the sale of the assets includes a personal service contract that contains a noncompete agreement, the purchaser can enforce its terms only with the employee's consent to an assignment.").

[11]*See Cullins,* 183 A.2d at 532; *Securitas Security Services USA, Inc. v. Jenkins,* 16 Mass. L. Rptr. 486 (Mass. Super. Ct. 2003), *available at* 2003 WL 21781385, at *5 (covenant did not contain assignment clause; employee did not covenant with successor company not to compete with it).

[12]*E.g., J.H. Renarde,* 711 A.2d at 412-13.

[13]*See Jenkins,* 16 Mass. L. Rptr. 486, *available at* 2003 WL 21781385, at *5.

[14]*Dickenson v. State, Dep't of Wildlife,* 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994).

ported by valuable consideration, which may include continued employment after the employee's agreement to the covenant,[15] we also hold that assignability clauses must be negotiated at arm's length and supported by additional and separate consideration from that given in exchange for the covenant itself. This places the burden on the employer to seek assignability and adequately compensates the party with the lesser bargaining power for the possibility that a stranger to the covenant may ultimately assume the right to its enforcement.

Burkhardt testified, by way of deposition, to his concern about working for a company other than NES, especially United. In this, he covenanted specifically with NES not to compete with NES. At the hearing on the motion for a preliminary injunction, the district court agreed with Burkhardt that the noncompetition covenant was personal in nature but concluded that, because the covenant held value, it was assignable. Testimony also established that United enjoyed a much greater volume of business in the trench shoring business than NES. Therefore, Burkhardt's obligation materially changed when the covenant was assigned. Burkhardt was thus "foreclosed from competing on any level with a much larger business entity."[16] This is, of course, specifically the risk that an employee must consider when agreeing to assignability of a noncompetition covenant.

## Assignment in asset sale agreement

The parties disagree as to whether the asset sale agreement expressly or impliedly contemplated assignment of Burkhardt's covenant not to compete. Burkhardt claims that there was no explicit assignment of the covenant and that United intended to negotiate new covenants and employment agreements with him after consummating the sales transaction. While acknowledging that the agreement did not explicitly assign Burkhardt's noncompetition covenant, United and NES agree that, as between themselves, they contemplated assignability as part of the sale and that their intent is controlling. They also argue that all assets were transferred, except those specifically excluded; that Burkhardt's covenant was not one of the excluded assets; and that the sale of goodwill implicitly transferred Burkhardt's covenant.

"We have previously stated that the court should not revise a contract under the guise of construing it. Further, '[n]either a

---

[15]See NRS 613.200(4); Camco, Inc. v. Baker, 113 Nev. 512, 517, 936 P.2d 829, 832 (1997) ("[A]n at-will employee's continued employment is sufficient consideration for enforcing a non-competition agreement.").

[16]Hess, 808 A.2d at 922.

court of law nor a court of equity can interpolate in a contract what the contract does not contain.' ''[17]

The asset sale agreement states that all contracts not listed as assumed contracts are excluded assets.[18] The agreement specifically lists three noncompetition covenants as ''assumed contracts,'' but it is silent regarding Burkhardt's covenant. Thus, by implication, Burkhardt's covenant, as an unlisted contract, was not included in the asset sale.[19] Further, United intended to enter into new covenants with the former NES employees. This evidences its intent not to assume Burkhardt's covenant. However, whether the asset sale included Burkhardt's covenant is of no moment, as we hold that NES could not, as a matter of law, assign the covenant absent Burkhardt's consent.[20]

## CONCLUSION

NES's attempted assignment to United of Burkhardt's covenant was invalid. Covenants not to compete are personal in nature and therefore are not assignable absent the employee's express consent. Further, an employer must obtain such consent through arm's-length negotiation with the employee, supported by valuable consideration beyond that necessary to support the underlying covenant. Accordingly, we reverse.

---

[17]*All Star Bonding v. State of Nevada,* 119 Nev. 47, 49, 62 P.3d 1124, 1125 (2003) (quoting *Club v. Investment Co.,* 64 Nev. 312, 324, 182 P.2d 1011, 1017 (1947)).

[18]NES itself cannot enforce the covenant because it has no legal interest to protect itself from any acts of competition by either Burkhardt or Traffic Control. *See, e.g., Gibson v. Eberle,* 762 P.2d 777, 779 (Colo. Ct. App. 1988); *Wolf v. James G. Barrie, P.A.,* 858 So. 2d 1083, 1085-86 (Fla. Dist. Ct. App. 2003); *Hess,* 808 A.2d at 923.

[19]*But cf. Campbell v. Millennium Ventures, LLC,* 55 P.3d 429, 435-36 (N.M. Ct. App. 2002) (asset sale agreement did not specifically assign covenant, but was included in sale of business' goodwill).

[20]We do not reach the issue of whether Burkhardt misappropriated trade secrets or confidential information gained in connection with his employment at NES and United. Again, as stated at oral argument before this court, United is currently seeking a permanent injunction to enforce Burkhardt's nondisclosure covenant. Therefore, this issue is not yet ripe for our review.