129 Nev., Advance Opinion 49

## IN THE SUPREME COURT OF THE STATE OF NEVADA

PENNY BIELAR,
Appellant,
vs.
WASHOE HEALTH SYSTEMS, INC., A
NEVADA CORPORATION; AND
WASHOE MEDICAL CENTER, INC., A
NEVADA CORPORATION,
Respondents.

No. 57924

FILED

JUL 11 2013

Appeal from a district court judgment in a contract action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed in part, reversed in part, and remanded.*

Durney & Brennan, Ltd., and Peter D. Durney, Reno,
for Appellant.

Lewis & Roca, LLP, and David C. McElhinney, Scott S. Hoffman, and S. Paul Edwards, Reno,
for Respondents.

_____

BEFORE PICKERING, C.J., HARDESTY and SAITTA, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Under NRS 439B.260(1), hospitals generally must reduce charges by 30 percent to inpatients who lack insurance "or other

13-20252

contractual provision for the payment of the charge by a third party," are not eligible for public medical payment assistance, and arrange within 30 days of discharge to pay the hospital bill.[1] The predominant issue for determination in this appeal is whether a settlement agreement with a third-party tortfeasor who allegedly caused the injuries necessitating the medical services is another "contractual provision for the payment of the charge by a third party" rendering the inpatient ineligible for the 30 percent statutory discount. Because we conclude that a patient's eligibility is determined at the commencement of hospital services, a later settlement agreement with a third party for the payment of such services does not disqualify the patient for the statutory discount.

---

[1]The pre-2011 version of NRS 439B.260(1) provided:

> A major hospital shall reduce or discount the total billed charge by at least 30 percent for hospital services provided to an inpatient who:
>     (a) Has no insurance or other contractual provision for the payment of the charge by a third party;
>     (b) Is not eligible for coverage by a state or federal program of public assistance that would provide for the payment of the charge; and
>     (c) Makes reasonable arrangements within 30 days after discharge to pay his hospital bill.

In 2011, the Nevada Legislature amended subsection (a) to read: "Has no policy of health insurance or other contractual agreement with a third party that provides health coverage for the charge." 2011 Nev. Stat., ch. 274, § 2, at 1523.

## FACTS AND PROCEDURAL HISTORY

Appellant Penny Bielar was involved in an automobile accident in 2002, and she received treatment for her injuries at respondent Washoe Medical Center, Inc., in April 2003, May 2003, and February 2005. For her treatment in April and May 2003, Bielar signed the hospital's Conditions of Admission and/or Treatment at Washoe Medical Center (COA) form. By the terms of the COA, Bielar granted a statutory lien to Washoe Medical on any settlement proceeds she obtained from the tortfeasor under NRS 108.590 "to the extent of the value of medical/[h]ospital *services* rendered." (Emphasis added.) She also signed an Inpatient Payment Arrangements (IPA) form, agreeing to "pay the balance in full as result of lien (in the settlement)." The IPA also stated that Bielar may "qualify for the 30% discount under NRS 439B.260," if she made payment arrangements within 30 days of discharge and held no insurance benefits.

In January 2005, Bielar signed a second COA form for additional inpatient treatment she was to receive in February 2005, granting Washoe Medical a second statutory lien. It is undisputed that Bielar had no health insurance at the time of her treatments and was ineligible for coverage under any state or federal programs. At trial, Bielar testified that it was her intent to pay the hospital bills with the money she received from the settlement proceeds recovered from her personal injury claim.

Bielar sued the trucking company that allegedly caused her accident; the company's insurer was Great West Casualty Company. In May 2003 and March 2005, respondents Washoe Health Systems, Inc.,

and Washoe Medical[2] filed in the action two separate notices of NRS 108.590 liens[3] against Bielar and Great West for Bielar's medical expenses incurred at Washoe Medical. The 2003 lien amounted to approximately $32,000, and the 2005 lien amounted to approximately $94,000.

In May 2005, Bielar settled her case against the trucking company. Great West agreed to pay Bielar $1.3 million, and in exchange, Bielar "agree[d] to indemnify and hold harmless [Great West] from any and all liens by healthcare providers, . . . known or unknown due to the [accident]." According to Great West, the settlement payment "was to include all elements of damages" and Bielar's counsel "was going to resolve the liens." Great West also understood that "$500,000 of that sum was for past, present, and future medicals." Great West sent Bielar's counsel a lump-sum check for $1.3 million.

---

[2]We will refer to Washoe Health Systems, Inc., and Washoe Medical Center, Inc., collectively as Washoe Medical unless otherwise necessary.

[3]NRS 108.590(1) states, in pertinent part, that if a

> person receives hospitalization on account of any injury, and . . . claims damages from the person responsible for causing the injury, the hospital has a lien upon any sum awarded the injured person . . . by a settlement . . . *to the extent of the amount due the hospital for the reasonable value of the hospitalization rendered before the date of . . . settlement.*

(Emphasis added.)

Subsequently, Washoe Medical sued Great West for satisfaction of the 2003 and 2005 liens. And, because Bielar had a contractual obligation to indemnify Great West, she tendered to Washoe Medical all money that it asserted was due on the liens.

Bielar then filed a complaint against Washoe Medical, disputing the amount of medical charges she incurred for treatment she received at the hospital. She asserted eight claims sounding in contract and tort. Her underlying arguments were twofold: first, she claimed that Washoe Medical failed to reduce their charges by 30 percent as required by NRS 439B.260(1); and second, she claimed that Washoe Medical charged her an unreasonable amount for the goods and services she received and/or improperly charged her for goods and services she did not receive.

Both parties eventually filed motions for summary judgment. Bielar sought a ruling from the district court that she qualified for a discount of the charges under NRS 439B.260. Washoe Medical contended that Bielar lacked standing to bring her lawsuit because the settlement agreement qualified as a "contractual provision for the payment of the charge by a third party" under NRS 439B.260(1)(a). Washoe Medical further argued that Bielar was ineligible for the discount under NRS 439B.260(1) because the two liens attached only to the settlement proceeds paid by Great West and Bielar failed to satisfy NRS 439B.260(1)(c) by making reasonable arrangements within 30 days after discharge to satisfy her hospital bill.

The district court denied Bielar's motion and granted Washoe Medical's motion, holding that the settlement agreement was a "contractual provision for the payment of the charge by a third party"

within the meaning of NRS 439B.260(1)(a). It further held that Bielar lacked standing to bring her lawsuit, reasoning that she was not damaged by Washoe Medical's refusal to discount the liens because the debt attached to the settlement proceeds paid by Great West and, thus, the settlement proceeds used to satisfy that debt belonged to Great West. Bielar appealed this order.

This court entered an order reversing the district court's order. *See Bielar v. Washoe Health Sys., Inc.*, Docket No. 50859 (Order of Reversal and Remand, June 23, 2009). This court held that Bielar had standing to assert her NRS 439B.260(1) discount claim as she presented sufficient facts to establish a logical nexus between her and her claim and an interest in its adjudication. Additionally, this court remanded the matter for further proceedings after determining that undeveloped issues remained concerning "the reasonableness of the hospital lien amount"; "whether [Great West] and Bielar intended the gross settlement amount to pay the entire non-discounted hospital lien"; and "whether Bielar's assignment of any potential tort recovery affects the statutory discount." In a subsequent order, this court clarified that the undeveloped issues "address the statutory interpretation issue on appeal" and stated that on remand "the district court should determine how these issues affect Bielar's claim to the NRS 439B.260 discount." *Id.* (Order Denying Rehearing and Clarifying Order, September 2, 2009).

On remand, Bielar argued that the COA's assignment clause was unconscionable as a matter of law and did not affect the statutory discount. She also argued that her eligibility for the statutory discount was unaffected by the settlement agreement because she was uninsured at the time of the rendition of her treatments. Washoe Medical maintained

that the COA affected Bielar's ability to request the statutory discount and that she was not entitled to the statutory discount based on the settlement agreement.

In July 2010, the district court entered an order on remand. Although it declined to address Bielar's contention that the COA's assignment clause was unconscionable, the district court did conclude that the execution of the assignment clause did not deprive Bielar of eligibility for the statutory discount. Moreover, it held that whether the parties intended for the settlement proceeds to pay the full lien amount had no material effect regarding the application of NRS 439B.260. Finally, it held that the reasonableness of the lien amount was irrelevant to its determination of Bielar's eligibility for the statutory discount. However, the district court once again reasoned that Bielar was ineligible for the statutory 30-percent discount because her settlement agreement constituted an "other contractual provision for the payment of the charge by a third party" under NRS 439B.260(1)(a). It also found that Bielar was "clearly entitled to challenge the reasonableness of the lien amount under NRS 108.590." Accordingly, the district court dismissed Bielar's claims for the statutory discount and proceeded to trial on the remaining accounting claim challenging the general reasonableness of the lien amount.

A jury trial was held on Bielar's accounting claim, during which she presented two witnesses. Dr. Gerard Anderson, a healthcare finance expert, testified that Medicare payments plus 25 percent represents the ceiling of hospital billing reasonableness. He also testified that Washoe Medical realized a 185-percent profit margin on Bielar's total bill, whereas the overall profit margin for the hospital industry is about 5 percent. Finally, he testified that hospitals do not disclose their master

billing files to the public, so a person cannot determine the reasonableness of a medical charge by comparing the price for goods and services offered at different hospitals. Additionally, Paula Polek, a billing auditor, testified that Bielar was overcharged approximately $3,800.[4]

At the conclusion of Bielar's case in chief, Washoe Medical moved for judgment as a matter of law pursuant to NRCP 50(a)(1). The district court granted the motion and subsequently entered an order in February 2011. It found that the evidence presented at trial demonstrated that Bielar intended for the settlement proceeds to pay the full amount of the medical liens and that the COA "was valid and binding." Further, the court found that since Great West earmarked $500,000 in special damages for Bielar's past and future medical expenses, Great West paid Washoe Medical's liens directly. Based on its findings, the district court reasoned that "decreasing [Bielar's] medical special damages would not serve to increase her general damages. Thus, as a matter of law [Bielar could not] show that she [was] entitled to the damages she s[ought] and no recovery may be awarded to her." The court also found that Bielar did not present sufficient evidence to show that the amounts billed by the hospital were unreasonable. Bielar appeals, challenging both the July 2010 and the February 2011 district court orders.

---

[4]It appears that Washoe Medical conceded the error during trial and later adjusted its billing statements accordingly.

## DISCUSSION

Because we conclude that Bielar had a right to recover from Washoe Medical under the COA, the IPA, and the lien statute, we must determine whether Bielar was eligible for the billing discount under NRS 439B.260(1). We conclude that the phrase "other contractual provision for the payment of the charge by a third party" does not include a later settlement agreement with a third-party tortfeasor, and we thus reverse the district court's finding that Bielar was ineligible for the statutory discount. However, we reject Bielar's contention that the district court erred by granting Washoe Medical's NRCP 50(a)(1) motion. Bielar failed, with one exception, to proffer sufficient evidence at trial to prove that the specific amounts Washoe Medical charged for medical services and goods were unreasonable.

*The district court erred by ruling that Bielar could not recover damages from Washoe Medical*

The district court concluded that Bielar was not entitled to recover damages because she intended to pay the full amount of Washoe Medical's claim from the settlement proceeds received from Great West, and decreasing Bielar's medical damages would not increase her general damages under the settlement agreement. We disagree.

"Contract interpretation is subject to a de novo standard of review." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). "A basic rule of contract interpretation is that '[e]very word must be given effect if at all possible.'" *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (alteration in original) (quoting *Royal Indem. Co. v. Special Serv. Supply Co.*, 82 Nev. 148, 150, 413 P.2d 500, 502 (1966)). "'A

court should not interpret a contract so as to make meaningless its provisions.'" *Id.* (quoting *Phillips v. Mercer*, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978)).

Our examination of the language of the contracts at issue here shows that under the IPA, Bielar agreed to pay Washoe Medical's liens from any settlement proceeds she recovered from her personal injury claim against the trucking company and Great West. By executing the COA, Bielar granted statutory liens to Washoe Medical for the "reasonable value" of the medical services rendered by Washoe Medical pursuant to NRS 108.590.

Thus, when Bielar executed the COAs and the IPAs, the parties recognized she may be eligible for the 30-percent statutory discount, and Bielar granted liens to Washoe Medical agreeing to compensate the hospital for the "reasonable value" of the hospital charges from any settlement proceeds she derived from her personal injury claim. In fact, Bielar confirmed her intention at trial.

We conclude that the district court failed to consider the express provisions of those agreements and NRS 108.590 when it concluded that Bielar intended to pay the full amount of Washoe Medical's claim from the proceeds obtained under the settlement agreement with Great West. Although Bielar did enter into a settlement agreement with Great West in which she agreed to indemnify Great West "from any and all liens by healthcare providers," the agreements she reached with Washoe Medical governed her obligation to pay Washoe Medical's claim and any reduction in medical expenses was irrelevant to the settlement agreement with Great West. Thus, we conclude that by the express terms

of the COA and the IPA, Bielar was entitled to seek the 30-percent statutory discount allowed under NRS 439B.260(1) and to exercise her right to challenge the reasonable value of the hospital charges pursuant to NRS 108.590.

*The district court erred by ruling that Bielar was ineligible for the billing discount under NRS 439B.260(1)*

We next consider whether Bielar qualified for the statutory discount under NRS 439B.260(1). Bielar argues that the district court erred by ruling in its July 2010 order that she was ineligible for NRS 439B.260(1)'s discount based upon the settlement agreement she entered into with the trucking company and Great West.[5] Specifically, Bielar asserts that she satisfied subsection (a) of NRS 439B.260(1) because the settlement agreement does not qualify as an "other contractual provision for the payment of the charge by a third party," the lack of which is required to obtain the statutory discount. Washoe Medical, however, insists that Bielar's settlement agreement with Great West renders Bielar ineligible to receive the discount.

---

[5]Bielar also argues that the district court violated the law of the case doctrine in its July 2010 order. *See Hsu v. Cnty. of Clark*, 123 Nev. 625, 629, 173 P.3d 724, 728 (2007) (stating that the law of the case doctrine requires that "the law or ruling of a first appeal must be followed in all subsequent proceedings, both in the lower court and on any later appeal"); *Gonski v. Second Judicial Dist. Court*, 126 Nev. ___, ___, 245 P.3d 1164, 1168 (2010) ("[Q]uestions purely of law are reviewed de novo."). We conclude that the district court's rulings on remand were not inconsistent with our order reversing and remanding Bielar's earlier appeal; thus, the district court did not violate the law of the case doctrine in its July 2010 order.

The IPA agreement Bielar executed with Washoe Medical specifically provided Bielar a right to the 30-percent discount as long as the statutory requirements of NRS 439B.260 were met. Determining whether a patient is eligible for NRS 439B.260(1)'s billing discount when he or she receives hospital services and later enters into a settlement agreement with a third party that includes an amount for such services requires this court to interpret the statute. "Statutory construction is a question of law, which this court reviews de novo." *Kay v. Nunez*, 122 Nev. 1100, 1104, 146 P.3d 801, 804 (2006). In interpreting statutes, we examine the statute's language and context to determine whether it has a plain and unambiguous meaning. *Gold Ridge Partners v. Sierra Pac. Power Co.*, 128 Nev. ___, ___, 285 P.3d 1059, 1062-63 (2012). If the text of a statute is unambiguous, we need not look beyond it. *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.3d 1132, 1135 (2004).

Before 2011, NRS 439B.260(1) provided that major hospitals must provide a 30-percent discount for inpatient services when the patient (a) "[h]as no insurance or other contractual provision for the payment of the charge by a third party," (b) is not eligible for a government public assistance program that would cover such charge, and (c) reasonably arranges to pay the bill within 30 days after discharge. Thus, as a noninsured patient who received hospital services when this version of the statute was in effect, Bielar was disqualified under subsection (a) only if her settlement agreement constituted a "contractual provision for the payment of the charge by a third-party."

Supreme Court
OF
Nevada

(O) 1947A

We conclude that Bielar qualifies for the statutory discount for two reasons. First, the plain language of the statute states in present-tense language that major hospitals must provide the 30-percent discount for charges to "an inpatient who . . . [h]as no insurance or other contractual provision for the payment of the charge by a third party." NRS 439B.260(1) (emphasis added). *See United States v. Wilson*, 503 U.S. 329, 333 (1992) (indicating that verb tense is significant in construing statutes). Thus, a patient's eligibility for the 30-percent discount is determined at the time of the rendition of the hospital services and a later agreement with a third-party tortfeasor for claims arising out of such services cannot be included in the phrase "[h]as . . . other contractual provision for the payment of the charge by a third party."

Second, because a settlement agreement is a contract, *see May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005), the question that follows is whether a term in a settlement agreement requiring a defendant's insurer to pay the injured party's medical expenses in settlement of an ongoing action constitutes a provision "for the payment of the charge." The purpose of a settlement agreement is typically to exchange money for a release of claims. *See* 53 Am. Jur. *Trials* 1 §§ 28, 262 (1995). By filing a claim, one seeks damages "as compensation for loss or injury." *Black's Law Dictionary* 281-82, 445 (9th ed. 2009) (defining, respectively, "claim" as a "demand for money" and "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). Thus, while a settlement agreement may be a contract, and the money exchanged under a term of the settlement agreement might include amounts for medical expenses as part of the requested or agreed-upon damages, the purpose of such a term is not to pay hospital bill charges, but

SUPREME COURT
OF
NEVADA

(O) 1947A

rather to compensate a plaintiff or potential plaintiff for loss or injury in order to obtain a release of claims. In that regard, a settlement agreement is more akin to a judgment than a contract to pay hospital bills. *See* 53 Am. Jur. *Trials* 1 § 41 (1995) ("A valid compromise agreement has many of the attributes of a judgment."). Indeed, neither a settlement agreement nor a judgment is necessarily dependent upon the hospital charges, but rather, both are more generally set in an amount to compensate the plaintiff or potential plaintiff for alleged injuries and will typically encompass amounts for several types of damages, including reimbursement for past and future medical expenses. Thus, a settlement agreement's provision for medical expenses is broader than, and different from, a contractual provision directly for the payment of hospital charges.

The legislative history of NRS 439B.260(1)(a) confirms that that provision was intended to apply to anybody receiving inpatient services who is not insured under a health insurance policy or similar device. *See, e.g.*, Senate Journal, 66th Leg., at 1356 (Nev., June 17, 1991) ("[T]here's a rollback of 30 percent for all of those people who have no insurance coverage or no state coverage." (Senator Rawson)); *id.* at 1361 ("In order to get this [30-percent] reduction, you must (a) have no insurance." (Senator Cook)). Insurance is generally a contract by which an insurer indemnifies the insured against risk of loss, and the insured is the specific person covered by the insurance policy. *Black's Law Dictionary* 870, 879 (9th ed. 2009) (defining, respectively, "insurance" and "insured"); 43 Am. Jur. 2d. *Insurance* § 1 (2003). Receiving insurance proceeds from a third-party liability policy under a settlement agreement does not render the recipient insured.

Further, the 2011 amendments to NRS 439B.260 and the commentary surrounding them support the conclusion that the discount is owed to any patient not covered under a health insurance or similar policy. NRS 439B.260 now provides, in relevant part, that

> 1. A major hospital shall reduce or discount the total billed charge by at least 30 percent for hospital services provided to an inpatient who:
>
> (a) Has no policy of health insurance or other contractual agreement with a third party that provides health coverage for the charge;
>
> . . . .
>
> 5. As used in this section, "third party" means:
>
> (a) An insurer, as that term is defined in NRS 679B.540;
>
> (b) A health benefit plan, as that term is defined in NRS 689A.540, for employees which provides coverage for services and care at a hospital;
>
> (c) A participating public agency, as that term is defined in NRS 287.04052, and any other local governmental agency of the State of Nevada which provides a system of health insurance for the benefit of its officers and employees, and the dependents of officers and employees, pursuant to chapter 287 of NRS; or
>
> (d) Any other insurer or organization providing health coverage or benefits in accordance with state or federal law.
>
> The term does not include an insurer that provides coverage under a policy of casualty or property insurance.

Thus, under the revised version of the statute, a person is only disqualified under subsection (a) if she has a health insurance policy or an agreement with an insurer, a health benefit plan, or a public agency that

provides her with health coverage. A settlement agreement with a third party's casualty insurance company to pay damages in order to obtain a release of a claim plainly would not constitute a health insurance policy or an agreement to provide health coverage. Moreover, these amendments were enacted to specifically negate any argument that receiving proceeds from a third-party tortfeasor's insurance policy could disqualify a patient from receiving the discount.[6]

"Where a legislature amends a former statute, or clarifies a doubtful meaning by subsequent legislation, such amendment or subsequent legislation is strong evidence of the legislative intent behind the first statute." 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 49:10, at 129 (7th ed. 2012); *see also Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 157, 179 P.3d 542, 554-55 (2008) (stating that when the Legislature clarifies a statute "through subsequent legislation, we may consider the subsequent legislation persuasive evidence of what the Legislature originally intended"). We conclude that the amendments to NRS 439B.260

---

[6]In the legislative history of the amendments, the commentary emphasizes that the statutory discount is intended to apply to all uninsured persons and that any right to payment resulting from an accident does not disqualify the patient from the statutory discount. *See* Hearing on S.B. 300 Before the Assembly Health and Human Services Comm., 76th Leg. (Nev., May 16, 2011) (explaining that the bill was intended to clarify the existing statute to prevent hospitals from refusing to discount the bills of a patient based on an expectation that the patient might someday obtain payment from the automobile insurance of a third-party tortfeasor).

were intended to clarify that the statute does not apply in instances such as this, where a hospital claims that a settlement agreement entitling the plaintiff to insurance proceeds as compensation for her injuries disqualifies her from receiving the 30-percent statutory discount.

Bielar sued the trucking company for damages arising from her personal injury claims. Bielar's settlement agreement was entered into "to provide for certain payments in full settlement and discharge of all claims," and it recited that the amounts paid "constitute damages on account of personal physical injuries." Conversely, the settlement agreement did not provide for Great West to pay specific hospital charges or to generally provide Bielar with health coverage. Accordingly, we conclude that this was not a contract for the payment of Bielar's hospital charges within the meaning of NRS 439B.260(1), and Bielar was eligible for the statute's discount. Because we conclude that Bielar was eligible for the statutory discount, we now turn to whether the district court erred by granting Washoe Medical's NRCP 50(a)(1) motion at the conclusion of Bielar's presentation of evidence at trial.

*The district court did not err by granting Washoe Medical's NRCP 50(a)(1) motion*

At the conclusion of Bielar's case in chief, Washoe Medical moved for judgment as a matter of law pursuant to NRCP 50(a)(1), which the district court granted. Bielar argues that the district court erroneously relied upon improper findings to conclude that her accounting claim was meritless.

This court reviews the district court's order granting an NRCP 50(a) motion de novo. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007). "Under NRCP 50(a)(1), the district court may grant a motion

SUPREME COURT
OF
NEVADA

(O) 1947A

for judgment as a matter of law if the opposing party has failed to prove a sufficient issue for the jury, so that his claim cannot be maintained under the controlling law." *Id.* at 222, 163 P.3d at 424 (internal quotations omitted). "In . . . deciding whether to grant a motion for judgment as a matter of law, the district court must view the evidence and all inferences in favor of the nonmoving party." *Id.* To overcome a motion brought pursuant to NRCP 50(a), "the nonmoving party must have presented sufficient evidence such that the jury could grant relief to that party." *Id.* at 222-23, 163 P.3d at 424.

The district court found that even if the hospital's charges were excessive, Bielar failed to demonstrate that the charges were unreasonable. We agree. Bielar's medical expert, Dr. George Anderson, testified as to what the hospital's profit margin should be and the reasonableness of hospital charges in general. But, Dr. Anderson did not offer any testimony as to whether the specific amounts Washoe Medical charged for medical services and goods rendered to Bielar were reasonable. There is no other evidence in the record—from Dr. Anderson or another source—to demonstrate that those charges were significantly higher than, or that Bielar would have been charged a significantly reduced rate from, another hospital situated within the region or in Nevada.

Viewing the evidence presented at trial and all inferences in the light most favorable to Bielar, we conclude that she failed to sufficiently prove the unreasonableness of Washoe Medical's charges for medical services and goods rendered such that the jury could have found in her favor. *See Foster v. Dingwall*, 126 Nev. ___, ___, 227 P.3d 1042,

1050-51 (2010) (indicating that a plaintiff must demonstrate damages to prevail on an accounting claim). Accordingly, we conclude that the district court properly granted Washoe Medical's NRCP 50(a)(1) motion.[7] However, because Washoe Medical conceded at trial that it overbilled Bielar $3,801.23, we conclude that Bielar is entitled to recover that amount.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the district court's July 2010 order holding that Bielar assigned her rights to Great West and that she was ineligible for the billing discount under NRS 439B.260(1)(a), and we remand this matter for further proceedings consistent with this opinion. However, because we conclude that Bielar failed to sufficiently prove the unreasonableness of Washoe Medical's charges for medical services and goods rendered, we affirm the district court's February 2011 order granting Washoe Medical's NRCP 50(a)(1)

---

[7]The district court also found that Bielar presented insufficient evidence showing that the amounts Washoe Medical actually billed Bielar were unreasonable. Bielar argues, for the first time in her reply brief, that this finding was also in error. We decline to consider this argument. *See Francis v. Wynn Las Vegas, L.L.C.*, 127 Nev. ___, ___ n.7, 262 P.3d 705, 715 n.7 (2011) (citing *Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005)) ("[A]rguments raised for the first time in an appellant's reply brief need not be considered."). Bielar also argues that the district court misapplied NRS Chapter 108 in deciding to grant Washoe Medical's NRCP 50(a)(1) motion; however, we conclude that this argument is meritless because the district court did not grant the motion based upon those grounds.

motion, with the exception that Bielar is entitled to recover the $3,801.23 Washoe Medical conceded at trial that it overbilled Bielar.[8]

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Saitta

---

[8]In the concluding paragraph of her opening brief, Bielar requests that if this matter is remanded, that it be reassigned to another district court judge because Judge Flanagan's refusal to follow this court's directives and his improper granting of Washoe Medical's NRCP 50(a)(1) motion "exhibit[ed] a 'probability of bias,' which . . . implicates due process considerations." We reject this request. Although we have concluded that the district court improperly granted Washoe Medical's motion, the record reflects that Judge Flanagan's decisions were unbiased, well-reasoned, and thorough. Thus, Bielar has failed to demonstrate any impartiality or impropriety on the part of Judge Flanagan, or show that her due process rights were violated. *See* NCJC Canon 1, Rule 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety."); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) ("It is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process. As the Court has recognized, however, most matters relating to judicial disqualification [do] not rise to a constitutional level." (alterations in original) (citation and internal quotations omitted)).