133 Nev., Advance Opinion 17

## IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL SOLID,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
VALERIE ADAIR, DISTRICT JUDGE,
Respondents,
and
MY ENTERTAINMENT TV; AND THE
STATE OF NEVADA,
Real Parties in Interest.

No. 71089

FILED

APR 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order allowing filming of petitioner's criminal trial by real party in interest My Entertainment TV.

*Petition denied.*

David M. Schieck, Special Public Defender, and Robert Arroyo, Randall H. Pike, and JoNell Thomas, Deputy Special Public Defenders, Clark County, for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Agnes M. Lexis, Deputy District Attorney, Clark County, for Real Party in Interest the State of Nevada.

Greenberg Traurig, LLP, and Tami D. Cowden, Mark G. Tratos, and Lisa J. Zastrow, Las Vegas, for Real Party in Interest My Entertainment TV.

Law Office of Lisa Rasmussen and Lisa A. Rasmussen, Las Vegas, for Amicus Curiae Nevada Attorneys for Criminal Justice.

 
17- 13951

BEFORE THE COURT EN BANC.

## OPINION

By the Court, GIBBONS, J.:

In this petition, we are asked to interpret Supreme Court Rules governing media in the courtroom. The writ petition arises from My Entertainment TV (MET) filming petitioner Michael Solid's first-degree murder trial for use in the television show *Las Vegas Law*. Solid contends that (1) MET is not a "news reporter" under these rules; (2) MET's footage will not be used for solely educational or informational purposes, but may instead be used for unrelated advertising purposes; (3) the district court erred by allowing MET to film the trial; and (4) the terms of MET's television series agreement with the Clark County District Attorney require the Special Public Defenders assigned to Solid's case to give written consent to allow filming.

We conclude that (1) MET is a "news reporter" under Supreme Court Rule (SCR) 229, (2) MET is using the footage for educational or informational purposes pursuant to SCR 241, (3) the district court did not err in allowing MET to film Solid's trial under SCR 230, and (4) the television series agreement does not require the consent of Solid's trial counsel. For these reasons, we deny Solid's writ petition.

## FACTS AND PROCEDURAL HISTORY

*Television series agreement*

MET films and produces *Las Vegas Law*, a television "docu-drama" focused on the Clark County District Attorney's Office. MET and Clark County signed a television series agreement allowing MET to film and produce the show.

 

In relevant part, the television series agreement provides:

> [Clark] County agrees to allow [MET] to enter the [Clark County District Attorney's Office] with personnel and equipment . . . for the purpose of . . . [conducting] ("Filming Activity") in connection with [*Las Vegas Law*] . . . .

Additionally,

> [i]n regards to Filming Activity directly involving County personnel, County facilities and County property, [MET] agrees that:
>
> > (i) Whether a County employee is to be recorded, filmed, taped or photographed is a personal decision of each individual County employee. All Filming Activity of County employees will be undertaken only with each individual employee's written consent . . . .

*Filming of Solid's trial*

Prior to jury selection, MET filed a media request to film Solid's trial. The district court granted the request. Solid then filed a motion to reconsider MET's request.

The district court issued an order denying Solid's motion to reconsider. The district court analyzed MET's filming of the trial under the framework required by the Supreme Court Rules on Electronic Coverage of Court Proceedings. The district court found, inter alia, that (1) MET is a news reporter as defined by SCR 229(1)(c); (2) the factors set forth in SCR 230(2) favor coverage by MET; and (3) the television series agreement between Clark County and MET does not give Solid's counsel, as county employees, a right of consent to allow filming. Following the district court's order denying his motion for reconsideration, Solid filed the instant writ petition seeking interpretation of the Supreme Court Rules involving media in the courtroom.

## ANALYSIS

*Solid's writ petition is justiciable*

Since MET has already filmed Solid's trial, there are issues of mootness for many of Solid's claims. "The question of mootness is one of justiciability." *Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010). "This court's duty is not to render advisory opinions but, rather, to resolve actual controversies by an enforceable judgment." *Id.* Accordingly, "a controversy must be present through all stages of the proceeding, and even though a case may present a live controversy at its beginning, subsequent events may render the case moot." *Id.* (citations omitted).

"Even when an appeal is moot, however, [this court] may consider it if it involves a matter of widespread importance that is capable of repetition, yet evading review." *Id.*; *see also Traffic Control Servs. v. United Rentals*, 120 Nev. 168, 171-72, 87 P.3d 1054, 1057 (2004) (recognizing that the capable-of-repetition-yet-evading-review exception to the mootness doctrine applies when the duration of the challenged action is "relatively short term" and there is a "likelihood that a similar issue will arise in the future").

Although Solid's trial has concluded, the remaining shows on the current production contract, as well as episodes on any future seasons, will present many of the same issues of widespread importance. Thus, the issues presented in Solid's petition are "capable of repetition, yet evading review." *Personhood Nev.*, 126 Nev. at 602, 245 P.3d at 574. Given the ongoing nature of *Las Vegas Law*, we conclude Solid's petition is justiciable.

*Review of the petition is warranted*

"This court has original jurisdiction to issue writs of mandamus and prohibition." *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. 180, 184, 273 P.3d 861, 864 (2012). "A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (citations omitted). Alternatively, a writ of prohibition is available "when a district court acts without or in excess of its jurisdiction." *Sandpointe Apartments, LLC v. Eighth Judicial Dist. Court*, 129 Nev. 813, 817, 313 P.3d 849, 852 (2013) (internal quotation marks omitted). As the petitioner, Solid bears the burden of demonstrating why extraordinary relief is warranted. *See We the People Nev. v. Miller*, 124 Nev. 874, 880, 192 P.3d 1166, 1170 (2008).

Because writ relief is an extraordinary remedy, consideration of the petition is entirely within the discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Generally, this court will exercise its discretion to consider a writ petition when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170, 34.330; *see Sandpointe*, 129 Nev. at 817, 313 P.3d at 852. However, this court may address writ petitions when they "raise important issues of law in need of clarification." *Int'l Game Tech.*, 122 Nev. at 142-43, 127 P.3d at 1096.

Solid seeks an interpretation of Supreme Court Rules, which leaves no direct appellate review available to him. *See* SCR 243 ("No direct appellate review of the interpretation or application of [the relevant Supreme Court Rules] shall be available to the news reporters or parties. News reporters or parties may, however, seek extraordinary relief by way

of writ petition."). Additionally, the petition presents a novel, important issue of law in need of this court's clarification. Accordingly, we exercise our discretion to review the writ petition.

*MET is a news reporter under SCR 229*

Solid argues that, because MET's stated purpose is to create a compelling "docu-drama," as opposed to a more traditional news program, MET is not a "[n]ews reporter" under SCR 229(1)(c). We disagree.

We "review de novo [the district court's] legal conclusions regarding court rules." *Casey v. Wells Fargo Bank, N.A.*, 128 Nev. 713, 715, 290 P.3d 265, 267 (2012). This court only looks beyond the plain language of a court rule if it is ambiguous or silent on the issue in question. *See In re Estate of Black*, 132 Nev., Adv. Op. 7, 367 P.3d 416, 418 (2016) (utilizing plain language to analyze NRCP 6(b)).

SCR 229(1)(c) defines a "[n]ews reporter" as "any person who gathers, prepares, collects, photographs, records, writes, edits, reports, or publishes news or information that concerns local, national, or international events or other matters of public interest for dissemination to the public."

Under the plain language of SCR 229(1)(c), MET meets the definition of a news reporter. The footage required to make *Las Vegas Law* is collected, edited, and published by MET and concerns local events (trials within the community) for dissemination to the public.

Additionally, Solid argues that MET is not a news reporter because of the editorial control of, and royalties paid to, Clark County. While this is perhaps an uncommon arrangement in the news business, it does not run afoul of any requirement under SCR 229(1)(c). Therefore, we conclude MET meets the definition of news reporter as contemplated by SCR 229(1)(c).

*MET's footage of the trial is being used for educational or informational purposes under SCR 241(1)*

Solid argues MET's intention to create an "entertaining" television show runs afoul of SCR 241, which requires the footage be used only for "educational or informational purposes," but not "unrelated advertising" purposes. In supporting this argument, Solid points to language within the television series agreement that demonstrates MET owns the rights to all footage for all purposes, including "advertising and promotional purposes in connection therewith." We conclude MET's footage of the trial is being used for educational or informational purposes under SCR 241(1).

The operative phrases in SCR 241(1) are "only . . . educational or informational purposes" and "unrelated advertising purposes." This requires this court to make two determinations: (1) whether the content of *Las Vegas Law* is educational or informational, and (2) whether the footage is used for *unrelated* advertising purposes. We conclude *Las Vegas Law* satisfies both prongs of this analysis.

First, the show focuses on criminal justice in Clark County, which, although potentially entertaining, satisfies the requirement for the recording to be used for informational or educational purposes. Such a conclusion comports with the above determination that MET is a news reporter, as that requires MET to provide either news or information to the public. Additionally, the determination of the relative entertainment of an otherwise informational or educational news program is outside the scope of this court's analysis. Indeed, "[t]he line between the informing and the entertaining is too elusive" for a court to decide when assessing the protections for a free press. *Winters v. New York*, 333 U.S. 507, 510

SUPREME COURT
OF
NEVADA

(O) 1947A

7

(1948). Thus, we conclude *Las Vegas Law*'s footage is used for an educational or informational purpose in compliance with SCR 241(1).

Second, we conclude any footage used in relation to the creation of the show would be used for a *related* advertising purpose and, thus, satisfies the second prong of SCR 241(1). Indeed, even advertisements about the show would be related to the show's central educational or informational purpose and, therefore, within the purview of SCR 241(1). Thus, unless the footage is used in a context entirely outside of the filming and production of *Las Vegas Law*, we conclude the recording at issue here complies with SCR 241(1).

*The district court did not err by allowing MET to film Solid's trial under SCR 230(2)*

The district court issued an order analyzing MET's filming of Solid's trial under SCR 230(2) and concluded that MET could film the trial but could not film jurors or non-consenting witnesses. Solid argues that the district court erred in this analysis and that his right to a fair trial would be jeopardized because his trial counsel will be distracted by the MET cameras in the courtroom. Additionally, Solid argues that the district court erred in allowing the filming because the filming would potentially dissuade witnesses from testifying and detract from the dignity of the proceedings. We conclude the district court did not err in its analysis.

The Supreme Court Rules governing media in the courtroom are "applicable to all civil and criminal trials in Nevada," "recognize the importance of preserving the decorum and dignity of the court, and require limitations imposed when any media representative is interfering in any way with the proper administration of justice." *Minton v. Bd. of Med. Exam'rs*, 110 Nev. 1060, 1083 n.16, 881 P.2d 1339, 1355 n.16 (1994)

Supreme Court
OF
Nevada

(O) 1947A

8

(internal quotation marks omitted), *disapproved of on other grounds by Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev., Adv. Op. 27, 327 P.3d 487, 491 (2014).

Additionally, SCR 230(2) provides:

[T]here is a presumption that all courtroom proceedings that are open to the public are subject to electronic coverage. A judge shall make particularized findings on the record when determining whether electronic coverage will be allowed at a proceeding, in whole or in part. Specifically, the judge shall consider the following factors:

(a) The impact of coverage upon the right of any party to a fair trial;

(b) The impact of coverage upon the right of privacy of any party or witness;

(c) The impact of coverage upon the safety and well-being of any party, witness or juror;

(d) The likelihood that coverage would distract participants or would detract from the dignity of the proceedings;

(e) The adequacy of the physical facilities of the court for coverage; and

(f) Any other factor affecting the fair administration of justice.

We conclude that Solid failed to overcome the presumption allowing electronic recording in the courtroom and, thus, the district court did not err in its findings pursuant to SCR 230(2). Solid's argument about the fairness of trial being impacted is premised on the camera's presence rendering his trial counsel ineffective. The record does not support this argument. Solid did not present evidence showing how MET's cameras affected the fairness of the trial, the dignity of the proceedings, or the ability of trial counsel to present effective advocacy any differently than

Supreme Court
of
Nevaoa

(O) 1947A

the other cameras in the courtroom. Additionally, the district court prohibited MET from filming jurors and non-consenting witnesses. Accordingly, we conclude the district court did not err in allowing MET to film Solid's trial.

*The television series agreement does not require the consent of Solid's trial counsel*

The television series agreement is a contract between Clark County and MET. Solid argues the written consent of his trial counsel, the Clark County Special Defender, is required prior to filming per the terms of the television series agreement. MET contends the language of the television series agreement applies only to filming outside the courtroom and that, regardless of those provisions, SCR 240 does not require consent of attorneys to be filmed in the courtroom.

"Contract interpretation is a question of law and, as long as no facts are in dispute, this court reviews contract issues de novo, looking to the language of the agreement and the surrounding circumstances." *Redrock Valley Ranch, LLC v. Washoe Cty.*, 127 Nev. 451, 460, 254 P.3d 641, 647-48 (2011). "A basic rule of contract interpretation is that every word must be given effect if at all possible." *Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 465, 306 P.3d 360, 364 (2013) (internal quotation marks omitted). "A court should not interpret a contract so as to make meaningless its provisions." *Id.* (internal quotation marks omitted).

When all sections are read together, the television series agreement does not require written consent from Solid's trial counsel. Section 1 discusses an agreement between Clark County and MET to "enter the [Clark County District Attorney's Office] . . . for the purpose of" conducting MET's "Filming Activity." Sections 1(a) and 1(a)(i) of the television series agreement further clarify the consent requirements for

SUPREME COURT
OF
NEVADA

(O) 1947A

10

county employees pursuant to MET's filming activity. We conclude the consent requirements of Section 1(a) and 1(a)(i) apply only to the filming activity occurring in the district attorney's office, as described in Section 1. To require consent of any county employee outside the scope of filming activities within the district attorney's office would make the provisions of Section 1 meaningless.

Thus, we conclude the television series agreement does not require the consent of counsel because its provisions should be read together and should be read to comport with this court's rules on electronic coverage of court proceedings.[1]

## CONCLUSION

Given the above analysis, we conclude that (1) MET is a "news reporter" under SCR 229(1)(c); (2) MET is using the footage for educational or informational purposes, as opposed to unrelated advertising as required by SCR 241; (3) the district court did not err in allowing MET to film the trial because Solid did not overcome the presumption in favor of electronic coverage provided by SCR 230(2); and (4) the television series

---

[1]We note that Nevada Attorneys for Criminal Justice filed an amicus brief arguing that the filming of *Las Vegas Law* requires attorneys to make extrajudicial statements in violation of Nevada Rule of Professional Conduct (RPC) 3.6(a). Extrajudicial statements are those that have a "substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." RPC 3.6(a). MET only airs episodes of *Las Vegas Law* after the filmed trials have already concluded. We conclude this limits the likelihood that the episodes could materially prejudice an already concluded trial and, thus, does not run afoul of RPC 3.6(a).

SUPREME COURT
OF
NEVADA

(O) 1947A

agreement does not require the consent of Solid's trial counsel. We therefore deny Solid's writ petition.[2]

_____, J.
Gibbons

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____

[2]We have considered Solid's other arguments and conclude they are without merit.